**TIMONEY, KNOX, LLP**
By:   Richard T. Abell, Esquire          Attorney for Defendant,
Attorney ID  #21517                      Calder Door & Specialty Company
400 Maryland Drive
P.O. Box 7544
Fort Washington, PA  19034-7544
(215) 646-6000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE DOUGLAS | : | JURY TRIAL DEMANDED |
|  | : | |
| V. | : | |
|  | : | NO. 02-4556 |
| SCHWEISS DISTRIBUTING, INC.; | : | |
| SCHWEISS BI-FOLD DOORS, INC.; and | : | |
| CALDER DOOR & SPECIALTY COMPANY | : | |
|  | : | |

## RESPONSE OF DEFENDANT, CALDER DOOR & SPECIALTY COMPANY, TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, SCHWEISS DISTRIBUTING, INC., AND SCHWEISS BI-FOLD DOORS, INC.

Defendant, Calder Door & Specialty Company, Inc. hereby responds to Defendants Schweiss Distributing, Inc. and Schweiss Bi-Fold Doors, Inc.'s Motion for Summary Judgment:

1.   Admitted

2.   Denied as stated.  It is admitted that this is a fair summary of the Plaintiff's deposition testimony.

3.   Admitted

4.   Denied.  There were no such shields in place at any time when the door was serviced by Defendant Calder Door.  Instead, at all times when the door was serviced by Calder, the door had shields which were attached only to the vertical cable and which had no attachment to the horizontal revolving drums or driveshaft.  As these shields were not attached to the drum or driveshaft, they did not provide a secure protection against fingers or hands being caught at the "pinch point" where

131153-1

1

the cable entered onto and began to be wrapped around the drum. See, Deposition of Don Geib, pp. 22 and 28-29; Deposition of William Resch, pp. 55-56 and 99; Deposition of Douglas Herr, p. 17. The foregoing deposition pages are attached hereto as Exhibit "1". The plaintiff was injured when his fingers and hand became caught between the cable and drum at such pinch point.

  5. Denied as stated. It is admitted that such is a fair summary of the testimony of the two listed witnesses. However, as stated in paragraph four above, no such shield was on these doors when the doors were serviced by defendant Calder Door before the accident. The shields on the door when the door was seen by Calder Servicemen before the accident were not attached to the drum. See, Exhibit 1.

  6-7. Denied. This defendant had no involvement in the design, ordering, sale, manufacture or installation of the door. This defendant lacks knowledge as to the truthfulness of this allegation. It is admitted that Schweiss does sell doors with a dead man control, and also with an electric eye, which will stop all movement of the door, and with a bottom safely door edge that will stop all movement of the door when struck by a worker's hand. It is admitted that the door in question lacked all three such safety features - the dead man switch, the bottom safety edge, and the electric eye. The expert retained by Calder Door will testify that each of these missing items caused a safety danger. See report of William Myer, P.E., attached as Exhibit 2. Further, the corporate designee of Schweiss has admitted that he was not involved in the sale and never verified with the Schweiss person involved in the sale whether these safety options were actually discussed with Modern Mushroom.

  8-10. Denied. See answer to paragraph six and seven above. It is admitted that Modern Mushroom possessed a copy of such documents at the time of this litigation and that such manuals contain the warnings as asserted by Defendant Schweiss.

131153-1

2

11-15. Denied. See answers to paragraphs six through ten above.

16. Denied as stated. The Plaintiff did acknowledge that there was an instruction that the operator should remain by the controls.

17-18. Denied as stated. It is unknown if Mr. O'Brien ordered others to remove the shield. No such order was given to Defendant Calder Door. No such removal was performed by Calder Door. No such recommendation was made by Calder Door. These allegations are denied by the various Calder witnesses who have been deposed. See, for example, Deposition of William Resch, pp. 80 and 88; Deposition of Jay Shertzer, p. 110; Deposition of Donald Geib, pp. 28-29. Attached as Exhibit "3"

19. Admitted

20. Denied. See answers for above as to the characteristics of the shields and whether they were attached to the drum. As there is a fact question as to whether the Schweiss shields were attached to the rotating drum (versus being attached only to the vertical cable), any conclusion or opinion which is based upon an assumption as to the resolution of a much disputed basic fact cannot be the basis for a case dispositive motion.

21. It is admitted that Mr. Krofchick has stated such opinion. Any inference that Defendant Calder Door removed the shield is denied as such is untrue.

22. Admitted.

23-27. Denied. These constitute conclusions of law and not averments of fact. They are incorrect statements of law. The removal of the shield was foreseeable, and was foreseen by Schweiss. See, expert report of William Meyer, P.E., attached hereto as Exhibit "2". Where the modification is foreseeable, the fact that such unforeseeable event occurred does not absolve the manufacturer from liability and does not constitute a superceding cause. Also, where a product

contains multiple defects each of which render the product as being unsafe, any action which affects one portion of the product but which does not affect the existence of other defects in the product does not eliminate the liability of the manufacturer/seller where the other safely defects which have not been altered are direct substantial factors in the occurrence of the Plaintiff's injury. Where a product contains a safety defect, and that defect exists at the time of the sale, and that defect is a direct and substantial factor in the causation of the injury, the manufacturer/seller is liable under a product defect - 402A theory unless an event occurs which rises to the level of being a superceding cause. A modification which is foreseeable can be a cause but not a superceding cause. In addition, Defendant Schweiss has also been sued on a negligence basis. Regardless of whether the possible removal of the original shield would support the dismissal of the product liability - 402A claim, it does not support a dismissal of the negligence claim against Schweiss. As to the negligence claims, Schweiss cannot secure its dismissal unless Schweiss establishes that a superceding cause existed. The establishment of a superceding cause in a negligence claim is the burden of Schweiss. Such is a high burden. Such burden is not fulfilled merely by showing some alterations of the product occurred where removal of the shields was a foreseeable event. Schweiss designed and sold replacement shields for use in an event such as occurred here -- where the original shield became damaged as a result of being entangled with the cable and needing to be removed and replaced. A dead man switch, an electronic eye, or a bottom safety edge stop control would have stopped the door and prevented the injury that occurred here, if the shield was removed. If any one of these known and available devices had been included in the door as sold and installed by Schweiss, this accident would not have occurred. As the removal of the shield was foreseeable (and was actually foreseen by Defendant Schweiss) and as Schweiss knew of ways to prevent injury even

if the shield were removed, but Schweiss sold and installed a door without such known safety features, no superceding cause exists.

28. Denied. Whether the removal of the shield was foreseeable is a fact question. Where the removal or any alteration is foreseeable, the removal is not a superceding course. The issue of whether removal is reasonably foreseeable involves factual issues such as whether the user will anticipate increased operating efficiency, or less machine breakdowns, or quicker and cheaper maintenance/servicing of the machine, without the shield in place. Such are fact questions. Such prevent dismissal of Schweiss before trial. In addition, as set forth above, the manufacturer's corporate designee in his deposition testified that damage to the shields such that they would have to be replaced was a recognized event, and Schweiss designed and made replacement shields for the very reason that the original shields were known to become damaged and would need to be removed. See, Deposition of Michael Schweiss, pp. 112-115. 125. 261-2 attached as Exhibit 4. This raises the issue of whether, as asserted by the expert witnesses of Calder and of the plaintiff, Schweiss should have responded to the concern over the possible removal of the shields by incorporating design features (dead man control, electric eye, bottom safety edge) that would make the door safe if the shields were removed. At most, this motion presents an argument that is dependent upon facts, and the issues cannot be resolved at this stage before trial. Also, Mr. Schweiss has admitted that the control box supplied here could be wired to operate in a "deadman control" manner, and the control was changed after the accident to such a deadman control at no cost merely by manes of changing how the wires were attached at the control. Mr. Schweiss also acknowledged that there was never a situation where a non-deadman control provided a safety advantage over a deadman control. [See, Deposition of Michael Schweiss, pp. 182-183, 293, 295-296, 315, 317; attached as Exhibit 5.]

WHEREFORE, the motion of defendant Schweiss for summary judgment should be denied.

TIMONEY KNOX, LLP


BY:_____
RICHARD T. ABELL, ESQUIRE
ATTORNEY FOR DEFENDANT
CALDER DOOR & SPECIALTY COMPANY

## VERIFICATION

I, Richard T. Abell, Esquire, do hereby state that I am counsel for defendant Calder Door & Specialty Company, in the within action; I aver that the facts set forth in the foregoing pleading are true and correct to the best of my knowledge, information, and belief.

I further aver that this verification is made subject to the penalties of 18 Pa.C.S.A., §4904 relating to unsworn falsification to authorities.

_____
Richard T. Abell, Esquire

**TIMONEY KNOX, LLP**  Attorney for Defendant
By:   Richard T. Abell, Esquire  CALDER DOOR & SPECIALTY
Attorney ID #21517  COMPANY
400 Maryland Drive, P.O. Box 7544
Fort Washington, PA  19034-7544
(215) 646-6000

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIE DOUGLAS   : | |
| : | JURY TRIAL DEMANDED |
| V.   : | |
| : | NO. 02-4556 |
| SCHWEISS DISTRIBUTING, INC.;   : | |
| SCHWEISS BI-FOLD DOORS, INC.; and   : | |
| CALDER DOOR & SPECIALTY COMPANY   : | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within response of defendant Calder Door & Specialty Company, to motion for summary judgment of Defendants, Schweiss Distributing, Inc., and Schweiss Bi-Fold Doors, Inc. has been duly served upon counsel listed below on June 23, 2003, via First Class, regular mail, postage prepaid.

| | |
|---|---|
| John M. Popilock, Esquire | Anne M. Manero, Esquire |
| COZEN & O'CONNOR | KENT & McBRIDE PC |
| 1900 Market Street | 1617 John F. Kennedy Boulevard, Ste. 1200 |
| Philadelphia PA 19103 | Philadelphia PA 19103 |
| | |
| Attorney for Plaintiff Jamie Douglas | Attorney for Defendants Schweiss Distribution, Inc./Schweiss Bifold Doors, Inc. |

TIMONEY KNOX, LLP

BY:   _____
RICHARD T. ABELL, ESQUIRE
Attorney for Defendant Calder Door
& Specialty Company